UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARRY BURNETT,

        Plaintiff,                  Case No.:
                                                  Hon.

vs.

FORD MOTOR COMPANY,

        Defendant.

---

Michael L. Pitt (P24429)
Beth M. Rivers (P33614)
Bayan M. Jaber (P85451)
Pitt McGehee Palmer Bonanni & Rivers PC
Attorneys for Plaintiff
117 W. 4th Street, Suite 200
Royal Oak, MI 48067
(248) 398-9800
mpitt@pittlawpc.com
brivers@pittlawpc.com
bjaber@pittlawpc.com

---

## **COMPLAINT AND JURY DEMAND**

Plaintiff Garry Burnett brings this action for constructive discharge and civil rights violations under the Americans with Disabilities Act ("ADA") against Defendant Ford Motor Company ("Ford") and states as follows:

## JURISDICTION, VENUE, AND PARTIES

1. This discrimination and constructive discharge case asserted by Mr. Burnett is based on disability discrimination and brought pursuant to the Americans with Disabilities Act ("ADA"), 42 USC §12101 *et seq*.

2. The jurisdiction of this Court over this controversy is based on 28 U.S.C. §1331, to enforce the provisions of the ADA.

3. Plaintiff has exhausted his administrative remedies as to his ADA claim by timely filing a charge of discrimination with the Department of Labor Office of Federal Contract Compliance ("OFCCP").

4. The Equal Employment Opportunity Commission ("EEOC") has entered into a Memorandum of Understanding with the OFCCP whereby the OFCCP has the authority to act as the EEOC's agent for the purposes of receiving complaints/charges. All complaints/charges of employment discrimination filed with the OFCCP alleging a Title VII basis shall be received as complaint/charges simultaneously dual-filed under Title VII. In determining the timeliness of such complaint/charge, the date the matter is received by OFCCP, acting as the EEOC's agent, shall be deemed the date it is received by the EEOC. (See Memorandum of Understanding among the DOL, EEOC, and DOJ. Nov. 3, 2020).

5. Mr. Burnett filed his complaint/charge of discrimination with the OFCCP on November 15, 2019. Mr. Burnett received his Notice of Right-To-Sue from the OFCCP on July 27, 2022, expiring in 90 days on October 25, 2022.

6. Therefore, this complaint is timely filed.

7. Venue is proper because the events giving rise to this action occurred in this district and division, and all parties reside in or operate within this district.

8. The events giving rise to this controversy took place in Wayne County, Michigan. Plaintiff is a resident of Wayne County, Michigan. Defendant's principal place of business is located in Wayne County, Michigan.

## STATEMENT OF FACTS

9. Mr. Garry Burnett (55/African American/Male) is a veteran of the United States Armed Forces, having served in the Army from 1986 to 1990.

10. Prior to beginning work at Ford Motor Company ("Ford"), Mr. Burnett sustained an injury to his left eye which resulted in complete blindness in his left eye.

11. This monocular vision is a disabling condition that impairs Mr. Burnett's general vision as well as his depth perception.

### Mr. Burnett Begins Work at Ford

12. On December 4, 2014, Mr. Burnett was hired and began work at Ford's Dearborn Truck Plant located at 3001 Miller Road, Dearborn, MI 48120.

13. From December 4, 2014, to April 2019, Mr. Burnett worked in the Paint Plant.

14. Mr. Burnett's essential job duties included overall quality control and inspection such as identifying paint imperfections, and sanding and polishing the vehicles.

15. For five years, Mr. Burnett performed his work excellently and without issue.

### Ford Fails to Reasonably Accommodate Mr. Burnett's Disability After Transfer from Paint to Assembly

16. In April of 2019, Mr. Burnett was transferred from the Paint Plant to the Assembly Plant and deemed a "floater," performing different assignments for short periods of time without any training.

17. In May 2019, Mr. Burnett was placed on his penultimate work assignment. Mr. Burnett was assigned work which required him to perfectly align carpet to the floor of a car and screw it into place with precision.

18. After attempting the job, Mr. Burnett expressed to his Union Representative that his disabling condition – left eye blindness – would not allow him to perform this job because of his impaired depth perception.

19. The Union provided Mr. Burnett with a pair of illuminating glasses.

20. Mr. Burnett made a good faith effort to use the illuminating glasses for three days.

4

21. However, the glasses did not remedy the issue as it was the depth perception that impeded Mr. Burnett's ability to perform the work, not simply the brightness of the workplace area.

22. Moreover, while Mr. Burnett attempted to perform this work, Area Supervisors Mr. Navagatto and Mr. Brian would approach Mr. Burnett's post and intimidatingly watch him for hours, waiting for Mr. Burnett to make a mistake. At times, they would yell at and berate Mr. Burnett loudly, placing further stress on Mr. Burnett.

23. Mr. Burnett complained to his Union Vice President, Mr. Al Alexander, about Mr. Navagatto's and Mr. Brian's behavior.

24. When asked about his behavior by Union Representative Mr. John Lindsay, Mr. Brian's response, in the presence of Mr. Burnett, regarding Mr. Burnett was "Well, what do you want me to do? He [Mr. Burnett] can't do shit. That's the bottom line. He is going to need restrictions."

**Ford Constructively Discharges Mr. Burnett**

25. Mr. Burnett asked for an alternative position that could accommodate his disabling condition. However, he was told he was ineligible for any other position.

26. Despite clearly expressing his need for a workplace accommodation, Mr. Burnett was placed on a new job which again required the use of perfect alignment, precision drilling, and took place in a dimly lit narrow space.

27. Mr. Burnett again complained to the Union that he could not perform the work due to his left eye blindness and lack of depth perception.

28. Shortly thereafter, Mr. Burnett was instructed to obtain work restrictions from his physician.

29. The restrictions instructed that Mr. Burnett was not to work with small dark items (such as screws or nails), was not to work in dark areas or narrow spaces without adequate lighting, and was not to work with electric drills.

30. Mr. Burnett promptly conveyed his restrictions in writing to one of the various supervisors assigned to his shift.

31. On June 9, 2019, the same day Mr. Burnett conveyed his restrictions, Mr. Burnett was placed on "No Work Available" status.

32. That same day, Union President Burkie Morris reassured Mr. Burnett that an alternative position would be found for him.

33. In September 2019, President Morris again texted Mr. Burnett and informed him an alternative job may have been found for him. However, despite following up, Mr. Burnett never heard back from Mr. Morris.

34.	Feeling that he was being aimlessly strung along by Ford, Mr. Burnett timely filed a charge of discrimination with the Department of Labor on November 15, 2019.

35.	Mr. Burnett remains on perpetual "No Work Available" status with Ford.

## COUNT I
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### (Disability Discrimination, Constructive Discharge)

36.	Plaintiff incorporates the foregoing allegations by reference as though stated in full herein.

37.	At all times relevant hereto, Plaintiff was an employee and Defendant was an employer under the ADA. 42 USC § 12111.

38.	The ADA makes it unlawful for an employer to discriminate against a qualified individual because the individual has a disability, a record of a disability, or because the employer regards the individual as disabled.

39.	At all times relevant to this action, Plaintiff was a qualified individual with a disability pursuant to 42 USC §12111(8) who, with or without accommodation, could perform the essential functions of his position as a Line Worker, or numerous other available positions that Defendant could have reasonably transferred him to.

7

40. Plaintiff was an individual with a disability within the meaning of 42 USC §12102, in that he had a physical impairment that substantially limits one or more of his major life activities, who with or without accommodation could perform the essential functions of his job with Defendant, and Plaintiff had a record of such a disability and/or was regarded by Defendant as having such a disability.

41. Plaintiff's disability – monocular vision, left-eye blindness – completely impairs his vision in his left eye and affects Plaintiff's depth perception.

42. Plaintiff's disability affected the major life activities of his ability to see, perceive objects in his surroundings, and perceive the depth/distance of objects in his line of sight.

43. The ADA further requires employers to engage in a meaningful interactive process with employees to collaboratively ascertain reasonable accommodation(s) that allow the employee to perform the essential functions of their work without presenting an undue hardship to the employer.

44. At all times relevant hereto, Defendant had a duty under the ADA to accommodate Plaintiff for purposes of employment unless the accommodation would impose an undue hardship. Defendant's duty to accommodate Plaintiff includes, but is not limited to, transferring Plaintiff to an available position, providing Plaintiff with the orientation/training necessary to become proficient in assignments, assigning work to Plaintiff which honored the work restrictions he was

instructed to obtain, providing Plaintiff with assistance in order to perform his duties if there was no other position available than one that required work with screws and precision drilling in small dark spaces.

45. At all times relevant hereto, Defendant could have accommodated Plaintiff's disability without suffering an undue hardship.

46. At all times relevant hereto, Defendant had a duty not to discriminate against Plaintiff with respect to his employment, compensation or terms, conditions, or privileges of employment, or to limit, segregate, or classify Plaintiff for employment in any way which deprived or tended to deprive Plaintiff of employment opportunities or otherwise adversely affect the employment status of Plaintiff.

47. Notwithstanding said duties as set forth above, Defendant discriminated against Plaintiff because of his disability and/or because it regarded Plaintiff as disabled and because Plaintiff had a history of a disability. Defendant discriminated against Plaintiff by constructively discharging him from employment when Defendant placed Plaintiff on perpetual "No Work Available" status after Plaintiff requested a reasonable accommodation for his disability and after Plaintiff obtained work restrictions.

48. As a direct and proximate result of Defendant's disability discrimination, Plaintiff has suffered and will continue to suffer lost wages and other

economic advantages of employment; Plaintiff has suffered and will continue to suffer mental anguish, humiliation, embarrassment, emotional distress, and pain and suffering resulting from Defendant's discriminatory conduct.

49. Accordingly, Plaintiff requests the following relief:

A. An order reinstating Plaintiff to his former position or comparable position at Ford.

B. An order awarding Plaintiff compensation in an amount he is found to be entitled.

C. An order awarding Plaintiff interest, costs, attorney fees and litigation expenses as provided for under the ADA.

D. An order granting Plaintiff such other relief as the court deems just and equitable.

Respectfully submitted,

PITT MCGEHEE PALMER BONANNI & RIVERS

s/*Bayan M. Jaber*
Michael L. Pitt (P24429)
Beth M. Rivers (P33614)
Bayan M. Jaber (P85451)
Attorneys for Plaintiff
117 W. Fourth Street, Ste. 200
Royal Oak, MI 48067
(248) 398-9800
mpitt@pittlawpc.com
brivers@pittlawpc.com
bjaber@pittlawpc.com

Dated: October 21, 2022

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury as to all issues raised in this action.

        Respectfully submitted,

        PITT MCGEHEE PALMER BONANNI & RIVERS

        s/*Bayan M. Jaber*
        Michael L. Pitt (P24429)
        Beth M. Rivers (P33614)
        Bayan M. Jaber (P85451)
        Attorneys for Plaintiff
        117 W. 4th Street, Suite 200
        Royal Oak, MI 48067
        (248) 398-9800
        mpitt@pittlawpc.com
        brivers@pittlawpc.com
        bjaber@pittlawpc.com

Dated: October 21, 2022